May it please the Court. Your Honor, Herrera was convicted of simple possession of controlled substance under NRS 453.336, an E felony. He was not convicted of a Category C felony under NRS 453.339. There is not a single mention of 339 anywhere in the administrative record. DHS made no mention of 339 to either the I.J. or the BIA. All sentences are suspended and probation ordered for all E felony convictions pursuant to NRS 193.130, and that is precisely what happened here in this case at page 238 of the administrative record. NRS 453.339 is not relevant to this case. The elements of simple possession of a controlled substance do not bring it within the ambit of a particularly serious crime. The elements of simple possession that my client was convicted of do not include an intent to sell, distribute, transport, or manufacture. There's not even an element of use. There is no element in that statute providing for harm or threat of harm to either person or property. And since simple possession is per se not a particularly serious crime, no further analysis is relevant pursuant to the BIA's opinion in matter of NAM at page 342 of that opinion, which was issued by the BIA in 2007. Even if the court the even if the agency were to get past that somehow and reach the particular facts and circumstances of this offense, the agency did not give any consideration to the fact that Herrera did no harm to person or property. This is a highly favorable factor appropriate to an analysis of whether Herrera committed a crime which makes him a danger to the community. It was error for the agency not to have considered this factor. As to the other You know, the applications for asylum, withholding of removal, and withholding of removal under the Protection Against Torture were pre-dermitted by the IJ and the BIA. As to deferral of removal under the Convention Against Torture, there was no adverse credibility determination made by the IJ, which means that there is a resutable presumption on appeal that his testimony was truthful. That rebuttable presumption was not overcome before the BIA. And what he testified to was that this gentleman, El Raton, is a Mexican He was told that El Raton is in Mexico. El Raton threatened his life via a friend named Jose. El Raton has the motive and the means to carry out his threat. And where is that in the record? I'm sorry, Your Honor? That's just your client's conclusion. That's right, Your Honor. That's right. The administrative record, as far as El Raton goes, all we have in the administrative record is the testimony of Herrera and what he said. So returning back to the particularly serious offense, our case law basically hasn't taken a strictly elemental approach to that. And as I read NAM, the BIA decision that's most relevant, it talks of potentially coming in within NAM. What do you think that the How would you construe that? Well, the case law also says that these have to be looked at on a case-by-case basis. It's hard to make bright line rules because you don't know what's going to be coming down the pipe. But I would look at what's not included. First, you have to look at the elements of the offense that he was actually convicted of. And then looking at those elements, is there an element that shows harm or threat to harm, person or property? You know, that bar here is supposedly all about whether the person's criminal conviction in the past makes him a danger to the community now. And that danger to the community over the years has been subsumed into the particularly serious crime analysis. But the case law, in the case law, they've said that it's more likely that it would be a particularly serious crime if there was an element of threat of harm to person, but that it's also possible there could be a particularly serious crime if there is some sort of threat of harm to property. But here, looking at what he was actually convicted of, there's neither. There's neither of those. But I gather your position is you look at the elements and then that's it. You don't look beyond the elements if you don't get to Stage 1. Well, if the elements don't provide a basis for believing that this crime falls within the ambit, within the range of particularly serious crimes, and the BIA said that's as far as you go. That's what they ruled. So the fact that it's 150 pounds of marijuana, which is certainly more than what you would consider to be a user quantity, doesn't play a role in your view? We don't get there. We don't get there because he didn't plead or he wasn't convicted of a certain he wasn't convicted of he was convicted of an indeterminate substance and an indeterminate amount of that substance. That's the offense that he was convicted of. Now, the other analysis of how much weight was it, what were the circumstances, how did it get there, so on and so forth, we only get there if the offense in question falls within the range, and the offense that he was convicted of does not. I mean, your position is simple possession can never be considered a particularly serious crime. Not as the language is worded in NRS 453. Well, just the statute in question. Anybody convicted of that statute, because it does involve drug trafficking. How do you square that with our case law where we said, for example, that the fact that these elements don't include mens rea doesn't matter in terms of its potential to be a particularly serious crime? So whether there was intent or not? No. I mean, I think what our case law basically said in a different context was that the objection in that particular case was there was no mens rea requirement, and therefore it can't be a particularly serious offense. And we said, no, we don't necessarily look at that. And here, it would seem to me, if we get beyond possession, because as Judge Ezra says, this is a lot of large quantity, and there were guns found. If you get beyond the question of pure statutory application, don't you lose? Whether we lose or not would depend on — it would be up to the agency to decide whether we lose or not if we go past the statutory analysis and we're analyzing the particular circumstances of the crime, and even there, it would need to be remanded because they did not take into consideration the lack of harm to person or property. That's an important factor that should have been considered by the agency if they're going to get that far in evaluating whether Herrera was convicted of a particularly serious crime. Okay. Do you want to reserve? Yes, Your Honor. Reserve what's left. Thank you. We'll hear from the government. May it please the Court. My name is Andrew O'Malley. I represent the Attorney General of the United States. The Court should deny the petition for review because the agency acted within its discretion in determining that Petitioner's crime was a particularly serious crime and because substantial evidence supports the denial of deferral of removal under the Convention Against Torture. With respect to the particularly serious crime determination, I'd like to emphasize at the outset here that NAM does not require a strictly elemental approach. I'd point out that NAM was issued in 2007, which was far before this element versus means analysis sort of took on a life of its own in the past few years. The decision is that this is within the Board's discretion or the agency's discretion. They look at these circumstances. If it looks like this might be the type of crime that might be a particularly serious crime, then they look beyond the statute and look to what the circumstances of that conviction were. And that's the case here. But you would agree we start with the offense? Yes, Your Honor. Okay. I agree. And we start with the offense. So why does this particular statute qualify as one that potentially would qualify as a particularly serious offense? Well, it is a possessory offense, but there's no limit to the amount of substance that is possessed for conviction under this. And when we look at the penalty provisions, we see that this punishes a significant amount of controlled substance, far more than anybody can use for their personal use, up to 5,000 pounds, through the reference out through the penalty provisions. That's not a simple possessory offense. That's what Petitioner was doing, which was running a stash house. And that is within the Board's discretion, within the agency's discretion, to determine that those types of crimes are particularly serious crimes. Well, it's sort of — it's interesting, because I understand your analysis, but then you have to get to the sentencing rather than the elements of the offense to get there, don't you? If you take a strictly — Elemental approach. Even under a strictly elemental approach, if this Court were to say, well, you know, we need to conduct a Taylor-Shepard analysis here, Mathis tells us — and I'm sorry, this is far beyond what's argued in our briefing — but Mathis tells us that where the statute provides different penalties for alternative elements, or for alternative portions of the statute, those are elements of the crime. So this would be divisible down to substance and weight, because we're talking about referencing out for 150 pounds of marijuana. Well, actually, the provision is 100 pounds to 1,000 pounds, I think, is what that provision falls into, but then it goes to 5,000 pounds as well. So those would be elements under that provision of Mathis, which says that, you know, when you have the different penalties, those are different elements. Would you agree that this statute is not a drug-trafficking statute? You know, it's a difficult determination to make, because there, again, when you reference out to those large-quantity provisions for the penalties, that's listed under the trafficking offense, the sale, and to the possession, simple possession of large quantities. It treats them the same. It's listed under that same trafficking in a controlled substance. Well, I mean, when we think of drug-trafficking offenses, generally we're talking about transportation, possession with intent to sell, distribution. And the Nevada statute contains none of that. It doesn't. But I think when you get into large quantities like that, there's a recognition that, for example, if you're running a stash house, you're participating in this activity that that is in some way a participation in the drug trafficking. And that's the case here. He maintained the marijuana in his garage and grew plants in his backyard for profit, knowing that this individual, and he testified to this, knowing that this individual was going to turn around and sell that marijuana. And as to our danger to the community, it's inherent in drug offenses, and the Board has long held this, that these are dangerous to the community and harm to persons. One thing that puzzled me about the IJ decision was that the IJ seemed to focus on and spent a lot of time on focusing on drug-trafficking offenses. And this didn't seem to fall within the classic. You can use your analysis to get there, but that's not what the IJ did as far as I could tell. I think the IJ, I think there's a, again, I think it's a bit of a participation in that drug-trafficking endeavor. I think the IJ looked at what was actually going on here, the circumstances of the case, and that's within their discretion to do, and said, look, this is not 150 pounds for your personal use. This is 150 pounds to be sold elsewhere. And that makes this a particularly serious crime. And you would agree, I think, that violation of the statute is not a per se, does not qualify per se as a particularly serious crime. You have to get past the statute and look at the facts of the case. I think so. Okay.  I believe so. Turning to deferral of removal under the CAT, there's just no compelling evidence here that this individual is going to be tortured by El Raton in Mexico. He doesn't know who El Raton is. It was two years between the time of the threat and his hearing, and he had heard nothing else from El Raton's friend. He doesn't know if El Raton is in Mexico or in the United States, and there's no evidence showing that he would not be protected by the government of Mexico if he was targeted by El Raton. Any further questions? No, sir. Okay. Thank you. Thank you for your time. I appreciate it. Rebuttal? I think the focus has to be on what was the alien actually convicted of. What was he actually convicted of? There's no evidence in the record that Herrera was convicted of holding any particular weight. There isn't. Now, there's a great deal of testimony that go to the facts and circumstances of what happened, but again, just going by the BIA's own case law, which we're entitled to hold them to, we don't get there. We don't get there unless the crime that he was actually convicted of, in this case, the simple possession of a drug on Schedule I through V of an indeterminate amount that has not been prescribed by a doctor, if that does not fall within the ambit of a particularly serious crime, and I don't see how it could, then that's the end of the analysis. That's the end of the analysis. Aren't — doesn't it really boil down to the discussion that Chief Judge Thomas had with opposing counsel as to whether the BIA has the right to look at the individual circumstances? Your position is that they don't. His position is that they do. Well, not — I'm not saying that they categorically don't. I'm saying that by their own case law, you know, the Frantescu decision told us that what we need to do to analyze a particularly serious crime is look at the nature of the offense, the sentence imposed, and the facts and the circumstances. But it didn't tell us what order they're supposed to be analyzed in or what weight they're supposed to be giving or anything. That was in 82. Then in 2007, the BIA came along with a matter of NAM and clarified that greatly and said, first, you look at the nature of the offense. And if the elements of that offense that the alien was convicted of does not fall within the ambit of a particularly serious crime, if it is per se not a particularly serious crime, then the rest of it doesn't matter. The sentence doesn't matter. The facts and circumstances doesn't matter. It's not a particularly serious crime. And the alien is allowed to go forward with his asylum and his withholding of removal applications. Thank you, Your Honor. Thank you both for your arguments today. Interesting question presented. And we will move to the next case on the oral argument calendar, Ramos-Mendoza v. Sessions.
judges: Fernandez, Thomas, Ezra